IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

JUSTIN DOUGAN, )
)
        Petitioner, )
)
vs. ) Case No. 18-06166-CV-SJ-ODS
)
JASON LEWIS, Warden, )
Southeast Correctional Center, )
)
        Defendant. )

<u>ORDER AND OPINION (1) DENYING PETITIONER'S PETITION FOR WRIT OF
HABEAS CORPUS, (2) DENYING ISSUANCE OF CERTIFICATE OF APPEALABILITY,
AND (3) DISMISSING MATTER WITH PREJUDICE</u>

Pending is Petitioner Justin Dougan's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Doc. #1. For the following reasons, the Court denies the Petition, and declines to issue a Certificate of Appealability.

## I.    BACKGROUND

The underlying facts were summarized by the Missouri Court of Appeals:

> Dougan was charged in the Circuit Court of Platte County with second degree felony murder, section 565.021, and armed criminal action, section 571.015. In exchange for reduced charges of murder in the second degree and unlawful use of a weapon, section 571.030, Dougan agreed to plead guilty. The charges stemmed from the shooting death of Spencer Crosthwait ("Crosthwait").
>
> Briefly, Dougan and Crosthwait's friend Alexander Johnson ("Johnson") were in a dispute over a girl. Johnson went to Dougan's house and during a disagreement Dougan fired a 30 caliber rifle twice at or near Johnson. Crosthwait and Johnson left the home. Dougan and two friends went looking for Johnson. Approximately three hours later, a car in which Dougan was riding in the back seat, came to a stoplight. Crosthwait and Johnson were in a separate car which was also stopped at the same light. Dougan lifted the same 30 caliber rifle and fired one round at the vehicle in which Johnson and Crosthwait were seated. The bullet traveled through the driver's side door of the vehicle in which Crosthwait was

> driving. The bullet struck Crosthwait in the chest penetrating both of his lungs and heart as well as other organs. The gunshot wound was fatal.
>
> At the plea hearing, the State presented to the court a verbal recitation of the facts that it intended to prove at trial. Dougan was asked if he agreed with the facts as set forth. While briefly clarifying the motivation behind some of his actions, Dougan confirmed that he agreed with the facts as presented by the State. The court found his plea to be knowing and voluntary. The court then sentenced Dougan, pursuant to the plea agreement, to two terms of life imprisonment to be served concurrently.
>
> On November 9, 2011, Dougan filed a timely pro se motion for post-conviction relief. An amended motion was filed by appointed counsel on March 19, 2012 (Motion). The motion court held an evidentiary hearing on the motion on September 6, 2016. At the hearing, Dougan, Dougan's plea counsel, and Dougan's father testified. Plea counsel testified that while Dougan's decisions may have been clouded by drug use, he believed that Dougan's actions were knowing and voluntary. Dougan testified it was merely his intention to scare Crosthwait when he discharged his rifle but he did not allege that the weapon was discharged by accident.

Doc. #7-6, at 3-4. Ultimately, the motion court denied Petitioner's motion for post-conviction relief. Petitioner appealed the motion court's decision to the Missouri Court of Appeal, solely alleging there was an insufficient factual basis to support his pleas of guilty to unlawful use of a weapon in that there was no basis for the finding he "knowingly" discharged a firearm. *Dougan v. State*, 544 S.W.3d 327 (Mo. Ct. App. 2018); Doc. #7-6. The Missouri Court of Appeals affirmed the judgment of the motion court. *Id.*

On November 8, 2018, Petitioner sought relief in this Court pursuant to 28 U.S.C. § 2254. Doc. #1. Petitioner articulates nine bases for his Petition: (1) counsel was ineffective for failing to conduct an investigation of Petitioner's alleged offenses and defenses and failing to advise Petitioner as to evidence that could undermine a conviction for first degree murder; (2) counsel was ineffective for failing to accurately advise Petitioner that the range of punishment included the possibility of a life sentence; (3) counsel was ineffective for failing to file a motion to suppress Petitioner's statements and giving erroneous legal advice as to the consequences of filing such a motion; (4) counsel was ineffective for failing to properly advise Petitioner of the possible outcomes

were he to be tried for first degree murder; (5) counsel was ineffective for failing to object to the prosecutor's closing argument; (6) Petitioner's convictions violate Due Process because his plea lacked an adequate factual basis; (7) Petitioner's convictions violate the Fifth Amendment's prohibition against double jeopardy; (8) counsel was ineffective because he failed to object to the double jeopardy violation; and (9) counsel was ineffective for failing to advise him of the double jeopardy violation. Doc. #1, at 12-37.

## II. LEGAL STANDARDS
### A. Habeas Corpus

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended 28 U.S.C. § 2254, a writ of habeas corpus shall not be issued on a claim litigated on the merits in state court unless the state court's decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" provisions in the first subsection have independent meanings. The "contrary to" provision applies "if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or reached a decision contrary to Supreme Court precedent when confronting facts that were materially indistinguishable." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011). The "unreasonable application" clause pertains to instances where "the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular case." *Id*.

Section 2254(d) "limits the applicability of the AEDPA's deferential standard to claims that have been 'adjudicated on the merits' in state court." *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (citation omitted). Federal courts must "undertake only a limited and deferential review of underlying state court decisions." *Id.* (citation omitted). When the last state court fails to provide the rationale for the decision, district

3

courts must "look through the unexplained decision to the last related state court decision that does provide a relevant rationale," and "presume that the unexplained decision adopted the same rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted by a "showing that the unexplained [decision] relied or most likely did rely on different grounds than the lower state court's decision…." *Id.*

When the state courts' decisions do not include explanations, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief…." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The district court must presume "the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99 (citation omitted). But this presumption "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100. The state court's determination that a habeas claim lacks merit – even if the determination is unexplained – "precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### B. Procedural Default

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992), and *Abdullah v. Groose*, 75 F.3d 408, 41 (8th Cir. 1996) (en banc)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to

4

his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

### III. DISCUSSION
#### A. Ineffective Assistance of Counsel

Seven of Petitioner's nine claims assert ineffectiveness of counsel. Issues of ineffectiveness of trial counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. *Id.* at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lawrence*, 961 F.2d at 115 (quoting *Strickland*, 466 U.S. at 694).

*Id.* Failure to satisfy both prongs is fatal to the claim. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (stating there is no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); *see also DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). "An ineffective assistance of counsel claim is a mixed question of law and fact." *McReynolds v. Kemna*, 208 F.3d 721, 723 (8th Cir. 2000). "Habeas relief will not be granted based on

the cumulative effect of attorney errors." *Shelton v. Maples*, 821 F.3d 941, 951 (8th Cir. 2016). The Court concludes a hearing is not necessary because Petitioner's claims can be evaluated based on the record before it. *United States v. Sellner*, 773 F.3d 927, 929-30 (8th Cir. 2014).[1]

### (1) Failure to Investigate and Obtain Evidence

In Ground One, Petitioner argues his trial counsel was ineffective for failing to conduct an investigation of his alleged offenses and defenses, and for failing to advise him as to evidence that could undermine a conviction for first degree murder. Doc. #1, at 12. Petitioner concedes this claim was defaulted by state post-conviction counsel because it was not raised in the state post-conviction petition. Doc. #12, at 12. He asserts cause for default exists under *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the Supreme Court recognized a defaulted claim of ineffective assistance of trial counsel may be excused if the default was due to ineffective assistance of post-conviction relief counsel. *Id.* at 17. To overcome procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim has some merit." *Id.* at 13. The second prong is evaluated by determining whether Petitioner has made a substantial case of ineffective assistance of trial counsel under the *Strickland v. Washington* standards. *See Dansby v. Hobbs*, 766 F.3d 809, 834-36 (8th Cir. 2014). As discussed above, to show ineffective assistance of counsel under *Strickland*, Petitioner must show (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." 466 U.S. at 687.

Judicial economy permits this Court to address the Petition's merits and avoid the process of resolving any procedural issues. *See Burkhalter v. United States*, 203

---

[1] The Court is aware of the Eighth Circuit's recent decision in *Carnnahan v. United States*, No. 18-2029, 2019 WL 2546637, at *1 (8th Cir. June 20, 2019). Unlike *Carnnahan*, the record does not contain contradictory statements that are facially credible and contain similar specificity. Here, the record affirmatively refutes Petitioner's allegations.

6

F.3d 1096, 1087 (8th Cir. 2000). The Court's election to reach the merits should not be construed as a holding that any claims are not procedurally defaulted.

Petitioner argues counsel should have better investigated potential witnesses Nick Van Pool and Chris Carpenter. Doc.#1, at 13-14. Petitioner alleges Van Pool's testimony would have put a "significant hole" in the State's case for first degree murder, and video and audio recordings of the police interviews with Carpenter would have undermined Carpenter's testimony. *Id.* Petitioner also argues his trial counsel failed to investigate the phone records of Alexander Johnson, Janie Dibben, and Petitioner. *Id.* at 15-16. According to Petitioner, this evidence would help prove he felt threatened and only one shot had been fired. *Id.* at 16. Lastly, Petitioner argues his trial counsel failed to investigate the bullet trajectory. *Id.* He alleges photographs show a bullet-sized hole in the driver's side-view mirror of the victim's vehicle and several cracks were around that hole. *Id.* Petitioner believes this evidence would have supported his claim that his intent was simply to fire a warning shot and not kill anyone. *Id.* Petitioner argues prejudice is established because this evidence would have significantly undermined the State's theory that the killing was intentional and occurred after deliberation. *Id.* at 18.

The post-conviction review motion court found Petitioner's failure to investigate claims were refuted by the record. Doc. #7-3, at 150-58. The court found counsel made reasonable strategic choices after proper investigation of the law and facts, and no prejudice resulted. *Id.* at 157. Counsel testified it was clear the victim was murdered with a weapon, Petitioner fired the weapon, and there were two eye witnesses. Doc. #7-2, at 19. Counsel discussed the phone records and indicated it was difficult to rebut the evidence and Petitioner never wished to risk trial. *Id.* Counsel testified he informed Petitioner of the criminal histories of the potential witnesses, and even if Petitioner's confession could be suppressed in the case in chief, his confession would likely be introduced on rebuttal. *Id.* at 22, 25.

Petitioner has failed to establish counsel's failure to further investigate potential witnesses, phone records, and bullet trajectory evidence was outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690. Petitioner also failed to show there was a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S.

7

52, 59 (1985). Petitioner has not established counsel's performance was deficient, and he has failed to establish a reasonable probability that, but for counsel's failure, the result of the proceeding would have been different. Petitioner had ample opportunity to complain about his trial counsel's performance, and instead of doing so, he stated he was "very satisfied" with counsel's performance. Doc. #7-3, at 35-37. Therefore, his post-conviction assertions to the contrary are conclusively refuted by the record and his requested relief should be denied. *Morrison v. State*, 65 S.W.3d 561, 564 (Mo. Ct. App. 2002). For these reasons, this claim is denied.

### (2) Accurately Advise

In Ground Two, Petitioner alleges counsel was ineffective for failing to accurately advise him as to the range of punishment, including the possibility of a life sentence. Doc. #1, at 19. As with Ground One, Petition asserts that cause for the default exists under *Martinez*, 566 U.S. 1. Again, the Court will bypass the question of exhaustion and address the merits of this claim.

Petitioner alleges his counsel informing him that the range of punishment for second degree murder is ten to thirty years imprisonment or life imprisonment did not adequately inform him that life imprisonment was a possible punishment. Petitioner wrote in his petition to enter a guilty plea that the range of punishment was "10 to 30 years in the Missouri Department of Corrections or life." Doc. #7-3, at 9. During the plea hearing, the prosecutor stated the range of punishment was ten to thirty years or life imprisonment. *Id.* at 21. At that hearing, Petitioner testified he had enough time to talk to his counsel about his plea and all of his questions were answered. *Id.* at 40-41. At sentencing, Petitioner was sentenced to two life sentences. *Id.* at 115. Following the sentence, Petitioner told the court he did not have any complaints or criticisms of counsel and had nothing but good things to say about him. *Id.* at 117.

To the extent Petitioner argues counsel's failure to inform his of all possible consequences of rejecting the State's plea deal, the Court is not persuaded. Although stated in the context of a guilty plea rather than rejection of a plea offer, counsel is not under an affirmative obligation to inform a defendant of all possible collateral consequences of a plea. *See Maxwell v. Larkins*, No. 08CV1896DDN, 2010 WL

8

2680333, at *4 (E.D. Mo. July 1, 2010); *Harris v. State*, 204 S.W.3d 371, 374 (Mo. Ct. App. 2006). Petitioner fails to cite authority indicating counsel has an affirmative duty to inform him of all possible consequences of rejecting or accepting a plea bargain. Further, Petitioner does not cite to authority supporting his argument that counsel telling him life imprisonment was a possible punishment did not accurately or adequately advise him that he could be sentenced to life. Accordingly, this claim fails.

### (3) Motion to Suppress

In Ground Three, Petitioner argues his trial counsel was ineffective for failing to file a motion to suppress Petitioner's statements, and giving erroneous legal advice about the consequences of filing such a motion. Doc. #1, at 21. Petitioner alleges counsel was ineffective for failing to advise him that filing a motion to suppress his confession could risk enhancement of his charge to first degree murder. Petitioner argues *North Carolina v. Pierce* does not allow a criminal defendant to be punished for exercising his Constitutional rights. 395 U.S. 711 (1969). Respondent points out, and Petitioner acknowledges, Petitioner failed to raise this issue on appeal of the denial of the post-conviction relief motion, and therefore, this claim is procedurally defaulted. Doc. #7, at 13. As with Ground One, Petition asserts that cause for the default exists under *Martinez*, 566 U.S. 1. Again, the Court will bypass the question of exhaustion and address the merits of this claim.

Counsel testified he reviewed the viability of a motion to suppress and believed Petitioner would prevail on that issue. Doc. #7-2, at 14-15. But there was other ample and available evidence that would have led to Petitioner's ultimate conviction. *Id.* at 15-16. Additionally, counsel testified if he began litigating issues, it would push the case onto a "trial track," and if the case was going to be tried by the State, it would be tried as a first degree murder case. *Id.* at 16. Counsel testified Petitioner never wanted to risk going to trial. And Petitioner testified he told his trial counsel not to file the motion to suppress if it meant his case would be tried as a first degree murder case. *Id.* at 96-97.

The Court finds Petitioner was not prejudiced by counsel's decision not to seek suppression based upon trial counsel's assessment that other ample and available evidence would have led to the risk of going to trial and Petitioner's ultimate conviction.

9

Petitioner failed to demonstrate that, even if his statements were suppressed, the result of the proceeding would have been different in light of the other evidence of his guilt. Accordingly, the relief sought by Petitioner is denied.

### (4) Range of Outcomes

In Ground Four, Petitioner alleges trial counsel was ineffective for failing to properly advise him of the possible outcomes were he to be tried for first degree murder. Doc. #1, at 25. Respondent argues Ground Four was subsumed in other claims in the amended post-conviction relief motion, and the claim was not pursued in the appeal of the denial of post-conviction relief. Doc. #7, at 15. Respondent further argues that whether the claim was or was not defaulted at that level, the claim was defaulted when Petitioner did not raise it in the appeal of the denial of the post-conviction relief motion. *Id.* Again, the Court will bypass the question of exhaustion and address the merits of this claim.

Petitioner alleges counsel did not inform him of the possible outcomes were he to be tried and convicted of first degree murder. The record does not support this claim. Petitioner's father testified there was a discussion between trial counsel and Petitioner of possibly facing the death penalty if a first degree murder charge was filed. Doc. #7-2, at 81. Petitioner also testified he was told if the charge was enhanced to first degree murder, his punishment would be life without parole or death. *Id.* at 88. Further, the guilty plea petition signed by Petitioner indicates he was advised of the nature of the charges, lesser included charges, and possible defenses. Doc. #7-3, at 10. The Court does not believe counsel's advice was incompetent. Petitioner testified he truthfully answered the questions in the plea petition and discussed every question therein with counsel. *Id.* at 12-13, 37. The Court rejects Petitioner's argument that trial counsel was ineffective for failing to properly advise him of the possible range of outcomes were he to face trial for first degree murder. Accordingly, this claim is denied.

### (5) Failure to Object to Argument

In Ground Five, Petitioner argues his counsel was ineffective for failing to object to the prosecutor's argument during his sentencing hearing. Doc. #1, at 27. First,

10

Petitioner argues counsel should have objected to the prosecutor's argument for a life sentence because it was centered around an argument that Petitioner was actually guilty of first degree murder, but he had been charged with murder in the second degree. *Id.* at 28. Second, Petitioner argues it was improper for the prosecutor to argue Petitioner was wearing a black stocking in July to conceal his appearance. *Id.* Respondent argues this claim is procedurally barred because it was not raised in the amended post-conviction relief motion or the appeal of the denial of that motion. Doc. #7, at 17. Petitioner admits this issue was never raised but contends the failure to preserve was due to ineffective assistance of appellate and post-conviction counsel. Doc. #12, at 17. Again, the Court will bypass the question of exhaustion and address the merits of this claim.

Petitioner argues the prosecution's "entire argument for a life sentence was centered around an argument that Mr. Dougan was actually guilty of first degree murder." Doc. #1, at 28. But the Petitioner was not charged with nor pled guilty to first degree murder. Petitioner argues the court "was clearly influenced by the prosecutor's claim that Mr. Dougan was guilty of first degree murder and sentenced Mr. Dougan according." Doc. #7-3, at 29. Specifically, Petitioner believes counsel should have objected to the prosecutor's argument that Petitioner only wore a stocking cap in July to conceal his appearance. *Id.;* Doc. #7-3, at 99. According to Petitioner, the cap only covered his hair and did not conceal any of his face. *Id.* He further argues, "[i]n arguing that this was evidence of an intent to disguise himself and therefore deliberation, the prosecutor thereby misstated the evidence and misled the court." *Id.* at 29. Petitioner believes the outcome at sentencing would have been different had counsel appropriately objected to these arguments. *Id.*

Petitioner does not identify what objection should have been made, nor does he cite authority indicating such an objection would have been meritorious. Petitioner fails to cite any case that supports his argument that the sentencing court could not consider all the facts of the case, not just those that supported the lesser offense to which Petitioner pleaded guilty. Additionally, Petitioner cannot establish he was prejudiced, because nothing in the record suggests his sentence would have been different had counsel objected. *Washington v. State*, 415 S.W.3d 789, 795 (Mo. Ct. App. 2013) (the

11

proper standard of review for prejudice on claims of sentencing error is "that but for counsel's deficient performance, there is a reasonable probability that he would have received a lesser sentence"). Petitioner pointed to nothing in the record demonstrating the sentencing court relied on the prosecutor's allegedly improper arguments. He also did not identify any statements referring to the prosecutor's first degree murder argument or whether the court decided to sentence Petitioner on that basis. The Court rejects Petitioner's claim of ineffective assistance of counsel for failing to object to the prosecutor's arguments during sentencing. This claim is denied.

### (6) Failure to Object to the Double Jeopardy Violation

In Ground Eight, Petitioner alleges his counsel was ineffective because he failed to object to the double jeopardy violation. Doc. #1, at 34. Respondent contends this ground for relief is procedurally defaulted because Petitioner did not raise this claim before any state court. Doc. #7, at 3. Petitioner admits this issue was never raised but contends the failure to preserve was due to ineffective assistance of appellate and post-conviction counsel. Doc. #12, at 17. Again, the Court will bypass the question of exhaustion and address the merits of this claim.

Even if Petitioner exhausted this claim, it fails on the merits. This claim rests on Petitioner's claim that his convictions violate the Fifth Amendment's prohibition against double jeopardy. As set forth *infra*, section III(c), that claim fails. Counsel cannot be faulted for failing to raise a meritless issue. *Bolden v. State,* 413 S.W.3d 658, 664 (Mo. Ct. App. 2013). Thus, this claim fails.

### (7) Failure to Advise Petitioner of Double Jeopardy Violation

In Ground Nine, Petitioner argues his counsel was ineffective for failing to advise him of the double jeopardy violation. Doc. #1, at 35. Respondent contends this claim is procedurally defaulted because Petitioner did not raise it before any state court. Doc. #7, at 3. Petitioner admits this issue was never raised but contends the failure to preserve was due to ineffective assistance of appellate and post-conviction counsel. Doc. #12, at 17.

Even if Petitioner exhausted this claim, it fails on the merits. As with Ground Eight, this claim rests on Petitioner's claim that his convictions violate the Fifth Amendment's prohibition against double jeopardy. As set forth *infra*, section III(c), that claim fails. Because Petitioner's double jeopardy claim is without merit, counsel's failure to raise it cannot constitute ineffective assistance of counsel. *See Thomas v. United States,* 951 F.2d 902, 905 (8th Cir.1991) (per curiam) ("Counsel's failure to raise these meritless issues does not constitute ineffective assistance."). Thus, this claim fails as well.

### B. Insufficient Factual Basis

In Ground Six, Petitioner argues his conviction violates his due process rights because his plea lacked an adequate factual basis. Doc. #1, at 30-32. Specifically, Petitioner argues there was no basis for the finding that he "knowingly" discharged a firearm. *Id.*; Doc. #7-6, at 5. Respondent argues this claim does not present a federal issue. Doc. #7, at 20. The Missouri Court of Appeals addressed this particular issue:

> "Rule 24.02(e) provides that a court 'shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." *Benson v. State*, 511 S.W.3d 488, 490 (Mo. App. W.D. 2017) (quoting Rule 25.02(e)). "The purpose of this rule is to ensure that a defendant understand[s] the specific charges against him, that he understand[s] the maximum penalty confronting him, and that he recognize[s] that he has waived specific legal rights by pleading guilty." *Id.* (internal quotations omitted). "A factual basis for a guilty plea is necessary to ensure that the guilty plea was intelligently and voluntarily entered, thereby satisfying due-process requirements." *O'Neal v. State*, 236 S.W.3d 91, 95 (Mo. App. E.D. 2007). "The factual basis must exist on the record as a whole, but it does not need to be established by the defendant's own words or by an admission of the facts recited by the State." *Benson*, 511 S.W.3d at 490. "A factual basis exists if the defendant understands the facts recited by the court and expresses an awareness of the nature and elements of the charge." *Generaux v. State*, 448 S.W.3d 355, 358 (Mo. App. W.D. 2014). "[I]t is not necessary that every element of the crime be explained so long as the defendant understands the nature of the charges against him." *Wofford v. State*, 73 S.W.3d 725, 727 (Mo. App. W.D. 2002).

Doc. #7-6, at 7-8. The Missouri Court of Appeals rejected Petitioner's claim that there was an insufficient factual basis for the plea to unlawful use of a weapon. Doc. #7-6, at 5-9. Petitioner affirmatively agreed he fired his rifle out of the car and shot the victim,

13

and he never offered any defense that the shooting was an accident or due to a malfunction of the gun. *Id.* at 9. It is not necessary to show Petitioner intended to injure or kill the victim, the State was merely required to show Petitioner knowingly discharged the weapon from a motor vehicle. *Id.* at 5.

"Before pleading guilty, Petitioner signed a written plea form in which he wrote that 'on July 29, 2010 I was a passenger in a 1999 Ford Contour in Platte County, Missouri. While inside the car I fired a shot outside the car and, as a result of my actions, Spencer J. Crosthwait died.'" *Id.* at 6. At the guilty plea proceeding, an extensive factual basis was provided to the court. *Id.* The Missouri Court of Appeals noted Petitioner took the opportunity to correct the court as to what he believed was a misstatement of his motive for the events leading up to the murder, but he did not dispute any of the facts of the shooting or suggest it was not done knowingly. *Id.* at 7. The Missouri Court of Appeals found Petitioner's argument that he was only trying to scare the persons in the other car did not contradict the "knowingly" requirement of the offense. *Id.*

Both Missouri state and federal law require a factual basis in order for a trial court to enter a judgment on a plea. *Mercado v. Russell*, No. 4:13CV794 HEA, 2016 WL 3476707, at *3 (E.D. Mo. June 27, 2016). This is not a Constitutional requirement. *See* Mo. Sup. Ct. R. 24.02(e) and Fed. R. Crim. P. 11(b)(3). If there were to be a finding that the court failed to adhere to the state rule requiring a factual basis for a guilty plea, Petitioner would not have been denied due process. *See Cranford v. A.L. Lockhart*, 975 F.2d 1347, 1349 (8th Cir. 1992). It was his voluntary act of pleading guilty that resulted in his deprivation of liberty and not the rule violation itself. *Id.*

This Court cannot issue a writ of habeas corpus unless it determines the Missouri Court of Appeals' decision was either contrary to or involved an unreasonable application of clearly established law or was "based on" an unreasonable determination of fact. 28 U.S.C. § 2254(d). This Court finds the decision of the Missouri Court of Appeals was not contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, this claim is denied.

## C. Double Jeopardy

In Ground Seven, Petitioner argues his convictions violate the Fifth Amendment's prohibition against double jeopardy because the elements of unlawful use of a weapon and the elements of felony murder with unlawful use of a weapon have the same elements. Doc. #1, at 32. Respondent contends this ground for relief is procedurally defaulted because Petitioner did not raise this claim before any state court. Doc. #7, at 3. Petitioner admits this issue was never raised but contends the failure to preserve was due to ineffective assistance of appellate and post-conviction counsel. Doc. #12, at 5. Again, the Court will bypass the question of exhaustion and address the merits of this claim.

The Fifth Amendment's Double Jeopardy Clause protects a criminal defendant from cumulative punishment. *Bally v. Kemna,* 65 F.3d 104, 106 (8th Cir.1995). This double-jeopardy protection limits the judicial branch by "assuring that the [sentencing] court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977). "[T]he question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Albernaz v. United States*, 450 U.S. 333, 344 (1981). In deciding whether cumulative punishment is intended, a court's "starting point must be the language of the statutes." *Id.* at 336. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where [the legislature] intend[s] ... to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Albernaz*, 450 U.S. at 344. The Supreme Court repeatedly has held, in the double-jeopardy context, that whether a state legislature intends cumulative punishment for two offenses is an issue of state law, over which state courts have final authority. *Dodge v. Robinson*, 625 F.3d 1014, 1018 (8th Cir. 2010).

In this case, Petitioner's double jeopardy claim turns on whether the Missouri legislature intended to impose cumulative punishment for the violation of both sections 571.030 and 565.021 of the Missouri Revised Statutes. The State's theory of

15

prosecution involved two separate acts. First, the Petitioner fired upon the victim's vehicle in violation of section 571.030 of the Missouri Revised Statutes. Second, this action resulted in the death of the victim in violation of section 565.021 of the Missouri Revised Statutes. Missouri's double jeopardy protections are statutorily codified in section 556.041, which states "when the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense." Petitioner was charged in Count Two with second degree felony murder, in violation of section 565.021, based on his perpetration of "unlawful use of a weapon."[2] The unlawful use of a weapon offense referenced in Count Two was charged in Count One, which alleged Petitioner committed this offense by discharging a firearm at a motor vehicle (section 571.030.1(9)).[3]

Missouri courts have rejected double jeopardy challenges to punishment for both unlawful use of a weapon and second degree felony murder based on the unlawful use of the weapon. *See, e.g., Trotter v. State*, 443 S.W.3d 621, 626 (Mo. Ct. App. 2014) (rejecting challenge that counsel was ineffective for not alleging punishment for unlawful use of a weapon and second degree felony murder violate double jeopardy). "The statute proscribing second degree felony murder states that 'the punishment for second degree murder **shall be in addition to** the punishment for commission of a related felony or attempted felony, other than murder or manslaughter.'" *Trotter,* 443 S.W.3d at 625 (citing Mo. Rev. Stat. § 565.021.2) (emphasis added). Therefore, as the state court determined, it is clear the Missouri legislature intended cumulative punishment for these offenses. Further, since we are bound by the Missouri court determination that the Missouri legislature intended cumulative punishment for these offenses, we cannot reject the constitutional conclusion that necessarily follows: no double jeopardy violation occurred in this case. *Dodge*, 625 F.3d at 1019. Thus, this claim fails.

---

[2] Section 565.021.1(2) provides "[a] person commits the crime of murder in the second degree if he: Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony ... another person is killed as a result [thereof.]"
[3] Under section 571.030.1(9) a person commits the crime of unlawful use of a weapon if he knowingly "[d]ischarges or shoots a firearm at or from a motor vehicle ..., discharges or shoots a firearm at any person, or at any other motor vehicle, or at any building or habitable structure, unless the person was lawfully acting in self-defense[.]"

16

## IV. CERTIFICATE OF APPEALABILITY

The Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

## V. CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus is denied, the Court declines to issue a Certificate of Appealability, and this matter is dismissed with prejudice.

IT IS SO ORDERED.

DATE: July 15, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT